THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM JOSEPH CASEY, Defendant-Appellant.

Fourth District   No. 4—88—0174

Opinion filed February 9, 1989.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Michael K. Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

After a jury trial, defendant was convicted of aggravated criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2).) Subsequently, the trial court sentenced defendant to 25 years' imprisonment. Defendant appeals arguing: (1) the trial court committed re-

versible error by refusing his instruction on battery; and (2) he was denied a fair trial by the failure of the trial court to *sua sponte* instruct the jury that the State had the burden of proving defendant acted intentionally, knowingly, or recklessly in committing the acts alleged.

We affirm.

The facts are well known to the parties and will be briefly summarized here. On August 7, 1987, an information was filed in McLean County alleging defendant knowingly had sexual intercourse with the complainant by use of force and in so doing caused bodily harm to her. Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2).

### COMPLAINANT

Complainant and defendant are cousins. She resided with defendant and his mother for approximately one month during the summer of 1987. She then moved into her own apartment. However, she had financial difficulties and asked defendant's mother if she could move back into their apartment. Defendant's mother told her to talk to the defendant.

On August 6, 1987, at approximately 10:30 p.m., defendant picked complainant up after she had completed work. Defendant had given complainant rides home from work on prior occasions. He was to give her a ride home on this occasion. However, defendant and David Dennison, a friend, went to Chuck McComb's house, where complainant changed from her work uniform. After she and defendant dropped Dennison off at his home, defendant asked her to accompany him to a third friend's house near Lake Bloomington. Complainant stated she and defendant discussed her old boyfriend as they drove toward the lake. Defendant indicated he needed to stop to urinate. He pulled into a parking lot near the lake and left the vehicle.

Complainant stated that after defendant returned to the vehicle, he looked at her in a manner which caused her to be uncomfortable. She told him to stop looking at her. Defendant responded that he could engage in sexual intercourse with her if he wanted to but he did not want to. Complainant stated she said fine and told defendant to quit looking at her. Defendant looked out the window and told complainant to remove her clothing. When she refused, defendant slid over onto her legs, held her arms, shook her, and told her to remove her clothing. Complainant refused again, and defendant hit her in the face and left side of her body with his open hand. He again told her to remove her clothing, and she again refused. Defendant then hit her face with his fist several times while pulling at her

sweatshirt. Complainant asked defendant to take her home.

Complainant stated she then opened the door of the vehicle and fell out of the car onto her stomach. Defendant jumped onto the top of her back, encouraging her to engage in sexual intercourse. He then grabbed her hair and hit her head against the parking lot. Defendant pulled complainant to her feet and held her against the vehicle. Complainant told him she would remove her shirt if he would let her go, but defendant refused to let go of her. Complainant removed her shirt but refused to remove her brassiere. Defendant removed her brassiere and held complainant's neck while she removed her jeans. Defendant took complainant to a grassy area near the lot, where they engaged in sexual intercourse. Complainant stated she was crying. However, defendant told her to be quiet or he would hit her again. Defendant said he would make sure she could move back into his mother's apartment, and as he drove into town, told her not to tell anyone. Complainant denied engaging in sexual intercourse with defendant prior to the instant occasion. She stated they had not been arguing prior to the assault.

### CORROBORATING WITNESSES

Several witnesses testified that complainant made a prompt report of the assault, looked as if she had been badly beaten, and was somewhat hysterical during the early morning hours of August 7, 1987. A forensic scientist testified that the seminal material found on complainant could have come from defendant.

### BONNIE SERONE

Bonnie Serone, a McLean County deputy, testified she and other officers arrested defendant. Defendant waived his *Miranda* rights and gave both an oral and written statement. In his written statement, defendant admitted asking complainant if she wanted to engage in intercourse, pushing her out of the vehicle, exiting the vehicle, and knocking complainant to the ground before she consented to remove her clothing. The written statement was also introduced at trial. In it defendant stated complainant was crying and asking defendant not to hurt her. She was harassing him at that time and did not want to engage in sexual intercourse, so he hit her once or twice in the face. Defendant did not think he had to force complainant, though she did not want to engage in sexual intercourse. Defendant admitted complainant said she would engage in sexual intercourse if he would quit hitting her.

DEFENDANT

Defendant testified in his own behalf at trial. He stated he and complainant had been arguing on the way out to the lake about complainant's boyfriend and money problems. The argument continued after they parked the car. Defendant told complainant to quit talking about her problems but she continued. Therefore, he hit her. Complainant yelled at defendant after he hit her, so defendant hit her again and pushed her out of the vehicle. Defendant admitted getting out of the car and hitting complainant again because she was yelling at him. He pushed her against the car to quiet her down. Complainant hit him so defendant grabbed her hair.

Defendant further testified that after complainant settled down he asked her if she wanted to engage in sexual intercourse. Initially, she was not sure but agreed to remove her clothing. They apologized to each other, and complainant agreed to engage in sexual intercourse. They had engaged in sexual relations several times while growing up.

Defendant further testified that his written statement was inaccurate. He and complainant did not discuss sexual intercourse until after they exited the vehicle. Complainant never said she did not want to engage in sexual intercourse with defendant, and defendant did not ask her to do so until after they quit fighting.

■ Initially, defendant argues battery is an included offense of aggravated criminal sexual assault. Therefore, the trial court committed reversible error in refusing his instruction. An included offense is an offense which is established by proof of the same or less than all of the facts or a less culpable mental state than is required to establish the offense charged. (Ill. Rev. Stat. 1985, ch. 38, par. 2—9(a).) It may be established by a comparison of the relevant statutory sections or by considering the offense as charged in the information or indictment. (*People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993; *People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633; *People v. Cramer* (1981), 85 Ill. 2d 92, 421 N.E.2d 189.) Section 12—14(a)(2) of the Criminal Code of 1961 states:

> "The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during the commission of the offense:
> \* \* \*
> (2) the accused caused bodily harm to the victim." (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2).)

Sexual assault is defined in part as an act of sexual penetration by

use of force or threat of force. Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1).

Section 12—3(a) of the Criminal Code of 1961 states:

"Battery. (a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a).)

The supreme court has defined "bodily harm" as the same under both statutes. *People v. Haywood* (1987), 118 Ill. 2d 263, 515 N.E.2d 45.

■ A comparison of the statutory definitions leads to the conclusion that battery is not an included offense of aggravated criminal sexual assault. Battery requires proof that the defendant acted intentionally or knowingly. (Ill. Rev. Stat. 1985, ch. 38, par. 12—3.) Aggravated criminal sexual assault is a general intent offense. (*People v. Ortiz* (1987), 155 Ill. App. 3d 786, 508 N.E.2d 490.) As such, it needs no proof of a particular mental state. A defendant could be convicted of aggravated criminal sexual assault without proof of one of the necessary elements of battery. Therefore, battery is not an included offense of aggravated criminal sexual assault. *People v. Leonard* (1988), 171 Ill. App. 3d 380, 526 N.E.2d 397.

■ Defendant argues, in essence, that since the State charged he "knowingly" committed aggravated criminal sexual assault that battery is an included offense. We disagree. The State was not required to prove specific intent under the aggravated criminal sexual assault statute, but only that defendant caused bodily harm to complainant. Specific intent or knowledge is a necessary element of battery. Even though proof of bodily harm would sustain one element of battery, no evidence was offered as to the intent or knowledge of the defendant. Therefore, an instruction on battery was not required. *People v. Leonard* (1988), 171 Ill. App. 3d 380, 526 N.E.2d 397 (holding battery is not an included offense of aggravated criminal sexual assault).

●4 Defendant next contends he was denied a fair trial by the trial court's failure to instruct the jury that the State had the burden of proving he acted intentionally, knowingly, or recklessly in committing the acts alleged. Defendant did not raise this argument below, offer instructions including a mental state, or raise the issue in his motion for a new trial. As such, the issue is waived. (*People v. Leonard* (1988), 171 Ill. App. 3d 380, 526 N.E.2d 397.) However, a reviewing court may modify the waiver rule where a grave error oc-

curred or where waiver will result in a denial of fundamental fairness in a factually close case. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.) Fundamental fairness includes insuring that basic jury instructions are given. Instructions on the elements of the offense charged are among those instructions. *People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861.

■■ ■ In *Ortiz* and *Leonard*, the courts rejected the precise argument defendant raises here. The courts noted it is not error to refuse to instruct on a specific mental state even though a specific mental state is alleged in the indictment. A mental state of intent, knowledge, or recklessness will be implied to satisfy the general intent requirement. (*People v. Talley* (1988), 177 Ill. App. 3d 170.) Additionally, approved jury instructions for sex offenses show instructions defining general intent offenses need not state a specific mental state. See Illinois Pattern Jury Instructions, Criminal, Nos. 11.31, 11.32, 11.33, 11.34 (2d ed. Supp. 1987).

Defendant argues the above cases are distinguishable because they did not give adequate consideration to the constitutional argument alleged. Defendant argues the concept of implied intent unconstitutionally shifts the burden of proof. In the cases cited by defendant, the supreme court disapproved of instructions which told the jury that a presumption existed as to the required mental state. (See *Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965; *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450.) No such burden-shifting instructions were given in the instant case. *People v. Avant* (1989), 178 Ill. App. 3d 139.

For the above reasons, we affirm the trial court.

Affirmed.

LUND and KNECHT, JJ., concur.