THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROSEMARY GRANT *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 80-146, 80-147, 80-148 cons.

Opinion filed October 7, 1981.

44

James J. Doherty, Public Defender, of Chicago (John E. Horn, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Kathleen Warnick, and Kevin W. Horan, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

In a jury trial, defendants Rosemary Grant, Carl Grant and Jadine Grant were found guilty of mob action. (Ill. Rev. Stat. 1979, ch. 38, par. 25—1(d).) In addition, Carl Grant was found guilty of criminal trespass to land (Ill. Rev. Stat. 1979, ch. 38, par. 21—3(a)), and Jadine Grant was found guilty of assault (Ill. Rev. Stat. 1979, ch. 38, par. 12—1). Rosemary Grant and Carl Grant were sentenced to one year probation. Jadine Grant was sentenced to six months probation and was fined $250. We reverse as to Rosemary Grant and reverse and remand as to Carl Grant and Jadine Grant.

Earline Weatherspoon testified that on August 23, 1979, at approximately 5 p.m., Carl and Rosemary Grant were on the steps outside of her grocery store in Dixmoor, Illinois. Carl Grant had a hammer in hand. He asked Mrs. Weatherspoon to step outside. When she ignored him, Carl Grant opened the door and again asked her to step outside. Mrs. Weatherspoon told Carl Grant to leave her property, and she called the police. She had asked Carl Grant to leave her property several times in the past. Rosemary Grant testified that she was not on the steps of the store that afternoon.

At approximately 8 p.m. on the same day, Mrs. Weatherspoon and her two sons were leaving the store and saw several members of the Grant family standing outside the store. There were also some policemen outside the store. As Mrs. Weatherspoon's son, Jerome, was attempting to close the burglar gates, Carl Grant was standing to the left of the door with a hammer raised above his shoulders. According to one of the officers, Carl Grant was about a foot and a half or two feet from Jerome Weatherspoon. Another officer testified that Carl Grant and the "boy that was closing the door [were] standing face to face." At this point, one of the officers stepped between the two youths.

Mrs. Weatherspoon and her other son walked towards the parking lot

to get her car. As Mrs. Weatherspoon was walking to her car, Jadine Grant approached her with a stick in her hand, uttered profanities, and said she was going to "bust [Mrs. Weatherspoon's] brains out" because Mrs. Weatherspoon had hit her grandson. Jadine Grant testified that she did not have a conversation with Mrs. Weatherspoon and denied that she attempted to hit her with a stick.

While Mrs. Weatherspoon continued to walk to her car, she was hit in the back by a glass jar. According to Mrs. Weatherspoon, Rosemary Grant, who had been cursing and calling her names, said that she threw the jar and wished that she had killed her. One of the officers testified that Rosemary Grant threw the jar at Mrs. Weatherspoon. Rosemary Grant testified that she was drinking Kool-Aid from a glass jar, but she never threw the jar at Mrs. Weatherspoon.

■■ Defendants contend that the complaints charging mob action were defective because they failed to allege that defendants acted with any mental state. As to the mob action charges, defendants attacked the sufficiency of the complaints by filing a motion in arrest of judgment. Defense counsel stated that the motion in arrest of judgment was directed at the mob action complaints only, and that it was not addressed to the assault and the criminal trespass to land complaints. When the sufficiency of a complaint is attacked by a motion in arrest of judgment (Ill. Rev. Stat. 1979, ch. 38, par. 116—2), the standard of review is whether the complaint complies with the requirements of section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—3). (*People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 648, 378 N.E.2d 1200, 1203; *People v. Haltom* (1976), 37 Ill. App. 3d 1059, 1063, 347 N.E.2d 502, 505.) One of the requirements of section 111—3 is that the charge set forth the nature and elements of the offense charged. Ill. Rev. Stat. 1979, ch. 38, par. 111—3 (a)(3).

Defendants argue that the mob action complaints did not set forth the nature and elements of the offense since they did not include one of the mental states incorporated by section 4—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 4-3(a)). The same contention was raised in *People v. Leach* (1972), 3 Ill. App. 3d 389, 279 N.E.2d 450. In *Leach*, which also dealt with a mob action complaint, the court stated:

> "A cursory examination of this complaint discloses that it does not allege a mental state; that is, defendant is not charged with having acted with intent, knowledge, recklessness or negligence. The mob action statute does not in express terms require a mental state. (See Ill. Rev. Stat. 1969, ch. 38, par. 25—1.) Our law, however, provides that a person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in

our criminal code; that is, intent, knowledge, recklessness or negligence. (See Ill. Rev. Stat. 1969, ch. 38, pars. 4—3, 4—4, 4—5, 4—6, 4—7.) * * * The mob action statute contains no indication, clear or otherwise, of a legislative purpose to make it an absolute liability crime. From this it follows that "[a] person cannot be guilty of the conduct proscribed by the Mob Action statute unless he intentionally, knowingly, or recklessly engages in such conduct." * * * Therefore, one of the mental states defined in our criminal code: intent, knowledge, recklessness or negligence is an essential element of mob action, the crime with which defendant was charged. * * *.

It is a general rule of criminal pleading that a complaint, information or indictment which does not set forth the nature and elements of the crime sought to be charged fails to state an offense and is subject to dismissal. * * * By these authorities, then, a complaint, like the one before us, which does not set forth all of the essential elements of the crime charged, fails to state an offense. It is fatally defective and cannot support a conviction. * * * Where a conviction rests on such a complaint, we will reverse without remand." (3 Ill. App. 3d 389, 392-93, 279 N.E.2d 450, 452.)

More recently, in *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 425, 375 N.E.2d 1297, 1305, the court held that indictments under the Motor Fuel Tax Law were defective in that they failed to incorporate a mental state requirement as prescribed by section 4—3(a) of the Criminal Code of 1961.

■■ Accordingly, we conclude that allegations of a mental state were required here. Since the complaints charging mob action do not allege a mental state, they do not set forth all of the essential elements of the crime charged. In that regard, they are fatally defective and cannot support convictions for mob action. Therefore, the mob action convictions are reversed without remand. See *Leach*, 3 Ill. App. 3d 389, 393, 279 N.E.2d 450, 452; *People v. Malone*, (1979), 71 Ill. App. 3d 231, 233-34, 389 N.E.2d 908, 910; *Cf. Valley Steel Products*, 71 Ill. 2d 408, 425, 375 N.E.2d 1297, 1305.

■■ Defendants next contend that their convictions for assault and criminal trespass to land must also be reversed without remand because the complaints also failed to allege that defendants acted with any mental state as to those crimes. However, as to the assault and criminal trespass to land charges, this contention was raised for the first time on appeal. When a complaint is attacked for the first time on appeal, the conviction will be upheld provided that the complaint (1) apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and (2) it allows pleading a resulting conviction as a bar to future

prosecution arising out of the same conduct. (*People v. Gilmore* (1976), 63 Ill. 2d 23, 29, 344 N.E.2d 456, 460; *People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440.) We conclude that the complaints for assault and criminal trespass to land meet these criteria. Therefore, we reject defendants' contention that their convictions for assault and criminal trespass to land must be reversed because the complaints are fatally defective.

Defendants next contend that the instructions relating to assault and criminal trespass to land were improper and prejudicial because they did not include one of the mental states included in section 4—3(a). The State argues that defendants waived this issue by submitting the instructions, which were taken from IPI Criminal (IPI Criminal Nos. 11.01, 11.02, 16.05, 16.07 (1968)).

■■■ Generally, a party who desires a specific instruction must offer it and request the court to give it, and the trial court has no obligation to instruct on its own motion. In criminal cases, however, this rule is modified in certain situations by the requirements of a fair trial. It has been held that a court bears the burden of seeing that the jury is instructed on the elements of the crime charged, on the presumption of innocence and on the question of burden of proof. (*People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487, 489; see also *People v. Carey* (1981), 94 Ill. App. 3d 631, 633-34, 418 N.E.2d 1119, 1121; *People v. Washington* (1978), 60 Ill. App. 3d 662, 665, 377 N.E.2d 397, 399; *People v. Tamayo* (1978), 56 Ill. App. 3d 800, 805, 372 N.E.2d 434, 438, *modified on other grounds* (1978), 73 Ill. 2d 304, 383 N.E.2d 227.) Also, where there are such grave errors in proffered jury instructions so as to affect plain justice, it is the duty of the court to inform the jury as to the law. (*People v. Pernell* (1979), 72 Ill. App. 3d 664, 667, 391 N.E.2d 85, 87; see Ill. Rev. Stat. 1979, ch. 110A, par. 451(c).) In the present case, since the alleged error in the instructions concerns the absence of one of the essential elements of the crimes charged and since it would affect plain justice, we address this issue. But see *People v. Anderson* (1981), 93 Ill. App. 3d 646, 655, 417 N.E.2d 663, 670.

■■■ The statutes defining assault and criminal trespass to land do not expressly include a mental state. (Ill. Rev. Stat. 1979, ch. 38, pars. 12—1, 21—3(a).) However, section 4—3(a) provides that a person is not guilty of an offense, other than an offense which involves absolute liability, unless he acts while having one of the mental states described in sections 4—4 to 4—7.[1] Since neither assault nor criminal trespass to land is a crime of absolute liability,[2] section 4—3(a) incorporates a mental state requirement

---

[1] The mental states described in sections 4—4 to 4—7 are: 4—4 (intent); 4—5 (knowledge); 4—6 (recklessness); 4—7 (negligence). Ill. Rev. Stat. 1979, ch. 38, pars. 4—4, 4—5, 4—6, 4—7.

[2] See Ill. Rev. Stat. 1979, ch. 38, par. 4—9: "Absolute Liability. A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in

in the definition of each of these offenses. (*Cf. People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 425, 375 N.E.2d 1297, 1305; *People v. Malone* (1979), 71 Ill. App. 3d 231, 233-34, 389 N.E.2d 908, 910; *People v. Leach* (1972), 3 Ill. App. 3d 389, 392-93, 279 N.E.2d 450, 452.) Therefore, the instructions on assault and criminal trespass to land lacked an essential element of the crimes charged. Defendants' convictions on these charges must therefore be reversed, and defendants must be granted a new trial. See *People v. Nunn* (1978), 65 Ill. App. 3d 981, 985-86, 382 N.E.2d 1305, 1309, *affirmed* (1979), 77 Ill. 2d 243, 396 N.E.2d 27; *People v. Hutchison* (1977), 46 Ill. App. 3d 725, 726, 361 N.E.2d 328, 329; *People v. Lewis* (1969), 112 Ill. App. 2d 1, 11, 250 N.E.2d 812, 817.

Pursuant to *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375, we next address defendant Carl Grant's argument that he was not proved guilty beyond a reasonable doubt of criminal trespass to land. He contends that there was only circumstantial evidence to show that he was on Mrs. Weatherspoon's property at 8 p.m., the time specified in the State's bill of particulars. Carl Grant relies upon a photograph of the grocery store. He maintains that it indicates he could have been on the public sidewalk rather than on the steps of the Weatherspoon property.

We conclude that there was sufficient evidence to support the jury's determination that Carl Grant was guilty of criminal trespass to land. The photograph of the store indicates that the door to the store is set back several feet from the sidewalk, and there is a cement step extending from the door to the sidewalk. It appears that the burglar gates are located at the border between the steps and the sidewalk. One of the police officers at the scene of the incident testified that Carl Grant and the "boy that was closing the door [were] standing face to face." From the photograph, it appears that one would have to stand on the step in order to close the door. Therefore, the jury could have concluded that Carl Grant and Jerome Weatherspoon were "face to face" on the step which was part of the Weatherspoon's property. We believe that the jury could have properly concluded that Carl Grant was guilty of criminal trespass to land beyond a reasonable doubt.

Accordingly, defendants' convictions for mob action are reversed without remand. The convictions for assault and criminal trespass to land are reversed, and the case is remanded for a new trial on these charges.

Reversed and remanded.

McNAMARA and McGILLICUDDY, JJ., concur.

---

Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."